# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN W. PERKINS, NORMAN STOEHR AND CATHERINE STOEHR, DAVID AND STACEY SCHAPIRO, MARIELLEN BAKER, SANGSOO WESLEY PARK, WILLIAM WHETSTONE, RICHARD LUCKETT, MARK NATHAN, MATTHEW DELANEY, PETER AND LOIS NATHAN, JOHN D. WILGEROTH, KERRY B. HOGGARD, MIKE BERKLEY, DAVID GOLDBERG, PAUL BRAOUDAKIS, AARON LAMBERT, KIMBERLY QUAN, STUART AND JOAN SCHAPIRO, JAMES B. BLACK, on Behalf of Themselves and All Others Similarly Situated, | Case No.: 09-CV-5951 (RJH) |

Plaintiffs,

v.

VERIFIED IDENTITY PASS, INC., AND DOE DEFENDANTS 1-25,

Defendants.

ORAL ARGUMENT REQUESTED

---

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PERSERVATION ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**PAGE**

I.    Introduction ............................................................................................................ 1

II.   Facts ..................................................................................................................... 2

III.  Legal Argument ................................................................................................... 4

    A.    Plaintiffs Require a Preservation Order to Ensure that they are able to
           Pursue this Litigation Effectively ................................................................ 4

           1.    Legal Standard ................................................................................ 4

           2.    The likelihood of loss of evidence absent a preservation order
                is great ............................................................................................ 6

           3.    Plaintiffs and the putative class will suffer irreparable harm if the
                requested preservation order is not granted .............................. 8

           4.    The requested preservation order would place only a minimal burden
                on Defendant ................................................................................ 11

    B.    Plaintiffs Are Entitled to a Preliminary Injunction ............................... 12

           1.    Legal Standard .............................................................................. 12

           2.    Plaintiffs are likely to succeed on the merits ........................... 12

           3.    Plaintiffs and the putative class will suffer irreparable harm if
                preliminary injunctive relief is not granted ............................... 14

IV.   Conclusion .......................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Addington v. Texas,*
 441 U.S. 418 (1979)..................................................................................................... 12

*Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.,*
 220 F.R.D. 429 (W.D.Pa. 2004) ................................................................................ 4

*Ellington Credit Fund, Ltd. v. Select Portfolio Services, Inc.,*
 No. 08-cv-2437 (RJS), 2009 WL 274483 (S.D.N.Y. Feb. 3, 2009) ........................... 5

*Morris v. N.Y. State Dep't. of Taxation and Fin.,*
 82 N.Y.2d 135 (1993)................................................................................................. 9

*Musto v. Transport Workers Union of America, AFL-CIO,*
 No. 03-cv-2325 (DGT)(RML), 2009 WL 116960 (E.D.N.Y. Jan. 16, 2009)............................ 4

*Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC,*
 582 F. Supp. 2d 616 (S.D.N.Y. 2008) ..................................................................... 12

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.,*
 202 F. Supp. 2d 228 (S.D.N.Y. 2002) ..................................................................... 12

*Statharos v. New York City Taxi and Limousine Comm'n,*
 198 F.3d 317 (2d Cir. 1999) ..................................................................................... 15

*Treppel v. Biovail Corp.,*
 233 F.R.D. 363 (S.D.N.Y. 2006) ...................................................................... 4, 6, 12

*U.S. v. Baltimore & Ohio R.R. Co.,*
 225 U.S. 306 (1912).................................................................................................. 15

*Walkovszky v. Carlton,*
 18 N.Y.2d 414 (1966)................................................................................................. 9

*Whalen v. Roe,*
 429 U.S. 589 (1977).................................................................................................. 15

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,*
 933 F.2d 131 (2d Cir.1991) ...................................................................................... 10

**Rules**

Fed. R. Civ. P.
   Rule 26(f)..................................................................................................................................... 4

## I.    Introduction

This action is a proposed nationwide class action against, among others, Defendant

Verified Identity Pass, Inc. ("Defendant" or "VIP").  Plaintiffs and the members of the putative

class are individuals who paid a membership fee and provided confidential information to VIP in

exchange for membership in VIP's CLEAR Registered Traveler Program ("CLEAR") and who

were enrolled as CLEAR members when VIP discontinued operations and refused to refund any

part of the membership fees it had collected.  Plaintiffs are seeking various forms of relief,

including restitution, damages and permanent injunctive relief against Defendant.  Plaintiffs

bring this motion to protect their interests during the pendency of this litigation.

Specifically, Plaintiffs respectfully request that this Court: (1) issue a preservation order

preventing Defendant from disposing of or destroying any relevant evidence and/or discoverable

documents and information in this case, including, but not limited to, the names, contact

information and payment records of putative class members; and (2) enter a preliminary

injunction prohibiting Defendant from selling, transferring or disclosing the private biographic

and biometric information of Plaintiffs and the putative class to any unauthorized person or

entity and prohibiting Defendant from maintaining the data in a manner that is unsecure or

inconsistent in any way with its Privacy Policy and with the Transportation Security

Administration's Registered Traveler Security, Privacy and Compliance Standards.

Although VIP abruptly discontinued its operation of CLEAR on June 22, 2009 and cut

off all avenues of communication with customers and members of the public on that date, it is

believed to still be in possession of extensive personal and confidential identifying information

about its members.  The preservation order Plaintiffs seek is necessary because VIP has

announced that it has started to delete some of that information in connection with the closure of

its operations and because the continued availability of such information is key to Plaintiffs'
ability to substantiate their allegations and to the ability of the Court and counsel to identify and
contact class members should this case be certified as a class action. The requested preliminary
injunction is also necessary because VIP has announced its interest, in violation of the CLEAR
membership agreement, in selling or transferring Plaintiffs' confidential information to another
Registered Traveler Program. Without such an order, Plaintiffs' privacy rights, as guaranteed by
the CLEAR Membership Agreement and applicable law, will be violated. Unless the Court
grants this motion and orders both the preservation of evidence and the preliminary injunction,
Plaintiffs and the putative class will suffer irreparable injury due to the likely destruction or
disclosure of the information collected by VIP.

## II.    Facts

The CLEAR Registered Traveler Program, operated by Defendant, was an airport check-
in membership program, which allowed members to bypass security lines and proceed directly to
screening at certain airports. Although VIP is a privately held company incorporated in
Delaware and headquartered in New York, Registered Traveler Programs, like CLEAR, are
regulated by the Transportation Security Administration ("TSA"). *See* Declaration of Christine
M. Fox, dated August 7, 2009 ("Fox Decl."), Ex. A (CLEAR's Privacy Policy), Ex. B (CLEAR's
Membership Agreement). Pursuant to TSA protocol, in order to enroll in CLEAR, applicants
were required to provide VIP with "biographic information," including the applicant's full name,
contact information and place of birth, and "biometric information," including the applicant's
fingerprints and an iris scan. *See id.*, Exs. A-B. This information was used to prove the
applicant's identity and to conduct a security threat assessment. *See id.*, Ex. B. CLEAR then
maintained this information using various safeguards. *See id.*, Ex. A.

2

On June 22, 2009, CLEAR abruptly ceased all operations, stating that it was unable to negotiate an agreement with its senior creditor to continue operations. *See id.*, Ex. C (CLEAR's website announcement regarding cessation of operations). Although the majority of the content on CLEAR's website was removed the same day CLEAR ceased operations, some minimal information about the status of members' personally identifiable information remains posted. *Id.* The information currently posted on the website indicates that member information in some locations has already been destroyed, with the rest to be deleted unless it is used for another, as yet unidentified, Registered Traveler program. *Id.* The website does not provide any method to contact CLEAR or VIP and notes that "CLEAR's call center and customer support email service are no longer available." *Id.* The website also states that no refunds of membership fees will be provided.

On June 29, 2009, Plaintiff Stephen Perkins filed a Class Action Complaint, on behalf of himself and all others similarly situated, against VIP. By June 29, 2009, however, the Company had already vacated their New York headquarters at 600 Third Avenue, New York, New York. Therefore the Complaint was served on VIP's agent for service of process on July 1, 2009. On July 28, 2009, Plaintiffs filed a First Amended Class Action Complaint ("FAC"). The FAC was sent to VIP's agent for service of process on July 28, 2009. On July 30, 2009, the FAC was served on Defendant's counsel who first contacted Plaintiffs' counsel on that same day and filed an appearance in this case on August 3, 2009. Defendant has not filed a response to the original Complaint or the FAC.

### III.    Legal Argument

#### A.    Plaintiffs Require a Preservation Order to Ensure that they are able to Pursue this Litigation Effectively.

##### 1.    Legal Standard

The Federal Rules of Civil Procedure give this Court "control over the discovery process" and the authority to make determinations "as are necessary for the proper management of discovery." *Musto v. Transport Workers Union of America, AFL-CIO*, No. 03-cv-2325 (DGT)(RML), 2009 WL 116960, at \*2 (E.D.N.Y. Jan. 16, 2009) (citing Fed. R. Civ. P. 26(f)). To that end, court orders preserving evidence are "common in circumstances in which evidence is subject to being destroyed or lost in routine and sometimes not-so-routine deletion or destruction of information in various mediums." *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 431 (W.D. Pa. 2004).

In ruling on an application for an Order requiring the preservation of evidence, a district court should consider and balance three factors:

> "1) the level of concern that the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation."

*Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (*quoting Capricorn Power Co.*, 220 F.R.D. at 433-34). As discussed below, consideration of these factors dictates that Plaintiffs' request for a preservation order be granted.

Plaintiffs' application for a preservation order also complies with the requirement that it set forth the proposed terms, time frame and/or scope of the requested order. *See Ellington*

*Credit Fund, Ltd. v. Select Portfolio Services, Inc.*, No. 08-cv-2437 (RJS), 2009 WL 274483, at

*2 (S.D.N.Y. Feb. 3, 2009). Here, as evidenced by the proposed order accompanying this

motion, Plaintiffs have specified that the Defendant's obligations under the proposed order will

extend only through the conclusion of this litigation and will cover documents, electronic data

and other information relevant to the allegations of the FAC, as well the ability to identify and

contact class members and the ability to engage in meaningful discovery on the potential liability

of VIP's principals or other persons beyond the corporate veil. The proposed order will require

that Defendant take steps to assure, for the duration of this litigation, that such evidence is not

deleted or otherwise disposed of or destroyed. The documents covered by the proposed order

include, but are not limited to, the following: (1) biographic information of Plaintiffs and

putative class members, including names, addresses and other contact information; (2) any

evidence of communications with CLEAR members, via mail, electronic mail or any other

method; (3) documents reflecting archived and/or stored websites containing CLEAR marketing

materials, information about promotional memberships or other information about CLEAR and

the services it provided and the terms of its agreements with customers; (4) memoranda and/or

other documents regarding marketing, pricing of memberships, the termination of operations, the

timing of the termination of operations, etc; (5) documents related to putative class members'

payment history and membership status; and (6) corporate and financial records, including, but

not limited to, accounting records, audited financial statements, minutes of corporate meetings,

records of disbursement of funds and bank records.

### 2.    The likelihood of loss of evidence absent a preservation order is great.

Unlike the typical case in which the defendant is a going concern, with non-litigation-related business reasons for maintaining its customer database, financial records and other business records, this case presents an extraordinary risk for the preservation of evidence necessary to assure a fair resolution of these judicial proceedings. It is reasonable to expect that a business that has ceased to operate will begin to discard files and data that no longer has any business purpose, even though such information may be relevant to future or pending litigation. In such cases, heightened concern for the preservation of relevant evidence is warranted. Where, as here, the business closed down its entire operation without prior notice, solicited and collected membership fees right up until the eve of its closure, announced that no refunds of any of those fees would be available and immediately cut off all avenues of communication with the company, the level of concern is increased exponentially. VIP has no incentive to preserve any materials that might assist its customers in pursuing refunds or damages against the company or its principals, and every reason to destroy such materials. Accordingly, the Court should have grave concerns about the maintenance and integrity of relevant evidence in this case.

Beyond these concerns arising from the circumstances of the shutdown of CLEAR's operations, VIP has already admitted that destruction of CLEAR members' identifying information has already begun and will continue without an order from the Court requiring its preservation. *See* Fox Decl., Ex. C. As such, "the continuing existence and maintenance of the integrity of the evidence in question" is at risk without an order from this Court requiring preservation. *Treppel*, 233 F.R.D. at 370.

On CLEAR's website, or more specifically what remains of its website, VIP indicates that "[e]ach hard disk at the airport, including the enrollment and verification kiosks, has now

6

been wiped clean of all data and software." *See* Fox Decl., Ex. C. The same is true of the

computers Defendant assigned to its corporate employees. *Id.* This is a clear statement from

Defendant that part of the "orderly shutdown" they have promised includes destruction of at least

some of the information they gathered from CLEAR members. Furthermore, Defendant also

indicates on its website that any information that is not used in conjunction with another

Registered Traveler Program "will be deleted." *Id.* This motion is particularly urgent because,

not only has Defendant already begun deleting member information that may be necessary for

purposes of litigation, such as Plaintiffs' motion for class certification, the website does not

provide any details about when the deletion of the remaining information might take place.

     Furthermore, Defendant currently has no known employees and no means by which

regulators, CLEAR members and their counsel or members of the public can contact the

company. There is, therefore, no accountability with respect to the security and maintenance of

the information Plaintiffs seek to preserve. Without the benefit of a custodian of records or other

employee oversight, and with no means of communicating with Defendant, Plaintiffs have no

assurance that there is an appropriate method in place to prevent loss, destruction or theft of the

information at issue. Additionally, given this complete lack of accountability, the fact that

CLEAR's operation has been shut down in its entirety and the obvious risk of liability for VIP's

termination of services without refunds, it is extremely likely that documents and information

that may prove useful or necessary to the prosecution of this action will be destroyed or are

already in the process of being destroyed. The Court's level of concern for the maintenance and

integrity of the evidence in question, therefore, should be extremely high.

3.    **Plaintiffs and the putative class will suffer irreparable harm if the requested preservation order is not granted.**

Plaintiffs and the putative class will suffer irreparable harm if the requested preservation order is not granted, and VIP disposes of or destroys the evidence at issue in this motion. The documents and information that Plaintiffs seek to preserve are critical to Plaintiffs' case in a number of respects. First, Plaintiffs will need the documents and information in order to substantiate their allegations and ultimately prevail on the causes of action they allege. For example, Plaintiffs allege a cause of action for fraud based on the fact that Defendant knowingly "omitted material information to customers" when it actively marketed its services and encouraged customers to purchase or renew memberships despite its "financial status and anticipated shut down." *See* FAC ¶¶ 64-71. In order to substantiate their claim that Defendant knowingly made false representations and material omissions, Plaintiffs will need access to various categories of documents, including, but not limited to, Defendant's marketing materials and corresponding communications with clients and potential clients, financial records and internal memoranda regarding the financial status of the company and email communications and other evidence of CLEAR's marketing plans, membership solicitations and sales and its plans for cessation of operations.

Similarly, Plaintiffs allege a breach of contract claim against Defendant. Plaintiffs' breach of contract claim is based on the fact that Plaintiffs and the putative class performed all of their obligations under their contracts with Defendant by paying the membership and providing the required personal and confidential information, whereas Defendant has failed to provide the "benefits and privileges Plaintiffs and the Class bargained for, including but not limited to a functional CLEAR program, pro-rated refunds upon termination of membership, and properly

8

secured maintenance of Class members' personal and confidential information." *See id.* at ¶¶ 72-77; *see also* Fox Decl., Ex. B.

In order to prove that Plaintiffs and the putative class did in fact uphold their end of the bargain with Defendant and to establish class damages, Plaintiffs will need access to, at a minimum, documents related to Plaintiffs' and putative class members' payment history and membership status. Currently, Defendant is in possession of the vast majority of the aggregate information that Plaintiffs need to substantiate their allegations. If Defendant is permitted to destroy or dispose of the information and documents at issue on this application, Plaintiffs' ability to prosecute this case and obtain the relief to which they are entitled will be severely prejudiced..

Furthermore, given the suspicious circumstances under which VIP terminated the CLEAR program and effectively "went underground," it is likely that Plaintiffs will have to seek an order piercing the corporate veil in order to obtain complete relief in this case. Accordingly, they will need to engage in discovery necessary to establish the factual support for such an order. New York courts will pierce the corporate veil "whenever necessary to prevent fraud or achieve equity." *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (1966) (citation omitted). The determination of whether the corporate veil should be pierced is fact-dependent, and there is no hard and fast rule. *See Morris v. N.Y. State Dep't. of Taxation and Fin.*, 82 N.Y.2d 135, 141 (1993) ("Because a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities, the New York cases my not be reduced to definitive rules governing the varying circumstances when the power may be exercised."). As a general rule, the movant must show that the owners of the company dominated the corporation and used such domination to commit a wrong against the plaintiffs. *Id.* Factors to be considered

9

include, for example, the absence of corporate formalities, inadequate capitalization, the use of

corporate funds for personal purposes and overlap in ownership, officers, directors, and

personnel. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131,

139 (2d Cir. 1991) (citations omitted).  Proof of these factors and other factors relevant to

piercing the corporate veil will require access to VIP's and CLEAR's corporate and financial

records.  Thus, Plaintiffs' ability to pierce the corporate veil and secure any damages that are

awarded will be severely limited if VIP is not prevented from disposing of or destroying its

corporate and financial records.

 Additionally, this case is appropriate for class treatment, and, in order for it to proceed as

a class action, it is imperative that this Court prohibit Defendant VIP from destroying or

disposing of the information it collected from its customers.  Defendant's customer database will

contain the names, addresses, email addresses and other contact information of individuals who

are both putative class members and witnesses with first-hand information regarding the

allegations in the First Amended Complaint.  That same database and/or the company's financial

records will contain information on the dates and amounts of payments made by plaintiffs and

the putative class members and the periods of their membership.  It is imperative that Plaintiffs

have access to this information in order to identify and communicate with class members, assure

that the best possible notice is given to class members upon certification of the class and

distribute class wide damages or in the event of a favorable judgment or settlement.  If VIP were

to destroy or dispose of the information identifying the putative class, no sanction, monetary or

otherwise, would be sufficient to rectify the injury that Plaintiffs and the putative class would

suffer.  Plaintiffs would have no means by which to reconstruct the list of putative class

members, which is believed to include approximately 250,000 individuals.  As a result, class

members would be deprived of the opportunity for this action to proceed as a class action on

their behalf, frustrating the underlying purposes of Rule 23.

### 4.    The requested preservation order would place only a minimal burden on Defendant.

The requested preservation order would place only a minimal burden, if any, on

Defendant. The burdens ordinarily associated with evidence preservation orders involve such

things as deviations from a company's ordinary business practices, the expense and use of

employee time to establish special record keeping systems, the alteration of computer programs

designed to archive or purge outdated or unnecessary customer information and business records,

etc. In this case, however, no such concerns are applicable. VIP's CLEAR program has ceased

to exist and, as a result, the data and other records to be preserved are static. VIP has no need to

purge data or files to make room for new information and would not need to create special

systems to assure that the data and files are not inadvertently deleted or destroyed by employees

in the ordinary course of business. If Plaintiffs' motion is granted, Defendant would be required

to simply maintain the information and documents at issue and take no affirmative action to alter

or delete existing records. In other words, all that would be required is the preservation the

status quo. Moreover, much of the important information is likely to be stored electronically,

requiring very little physical space. To protect such information, VIP need only assure that it is

properly stored. Clearly, any minimal burden imposed by such secure storage of files and data is

far outweighed by the importance of the information to the effective prosecution of this case on a

class wide basis and the harm that Plaintiffs would suffer if it were lost or destroyed.

Finally, a preservation order is in Defendant's best interest given that such an order

"protects the producing party by defining clearly the extent of its obligations. In the absence of

such an order, that party runs the risk of future sanctions if discoverable information is lost

11

because it has miscalculated." *Treppel*, 233 F.R.D. at 369. Consequently, Plaintiffs' request for a preservation order not only satisfies the requirements for the issuance of such an order, it would, if granted, have the effect of protecting both parties.

For the foregoing reasons, Plaintiffs and the other members of the putative class respectfully request a preservation order preventing Defendant from disposing of and/or destroying any personal identifying information VIP collected from its members through CLEAR be granted.

**B.    Plaintiffs Are Entitled to a Preliminary Injunction**

**1.    Legal Standard**

To secure the requested preliminary injunction, Plaintiffs must demonstrate irreparable harm and "either (a) a likelihood of success on the merits of the underlying claim or (b) sufficiently serious questions going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly in [their favor]." *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp. 2d 228, 233 (S.D.N.Y. 2002) (citations omitted); *see also Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 624 (S.D.N.Y. 2008). Plaintiffs must meet a preponderance of the evidence standard. *Shred-It, USA*, 202 F. Supp. 2d at 233 (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)).

**2.    Plaintiffs are likely to succeed on the merits.**

Plaintiffs allege their entitlement to permanent injunctive relief prohibiting the sale, transfer or disclosure of the private information of Plaintiffs and the Class to any unauthorized person or entity and further prohibiting Defendant from maintaining the data in a manner that is unsecure or inconsistent in any way with its Privacy Policy and with TSA's Registered Traveler Program Security, Privacy and Compliance Standards for Sponsoring Entities and Service

Providers. *See* FAC ¶¶ 100-107; *see also* Fox Decl., Ex. D. Although Defendant is contractually prohibited from disclosing such information to unauthorized third parties and obligated to handle the information at issue in a manner that assures such non-disclosure, VIP's cessation of the CLEAR program and other factors indicate a significant risk that the confidential information of Plaintiffs and other class members will be compromised. In fact, there is a high level of doubt that Defendant intends to or will comply with its contractual obligations to Plaintiffs and the putative class in this regard. Accordingly, it is likely that Plaintiffs will prevail in securing a permanent injunction.

Here, Plaintiffs and the putative class entered into valid contracts with VIP. Under the contracts, Plaintiffs and the putative class agreed to pay a membership fee and provide personal and confidential information in exchange for membership in CLEAR and assurances that their personal information would be maintained in secure manner. *See* Fox Decl., Exs. A-B. In its Privacy Policy, Defendant established that none of the information that Defendant collected from CLEAR members could be used "for any purpose outside the operation and maintenance of the CLEAR Services." *See id.*, Ex. A. To that end, Defendant pledged not to sell or transfer CLEAR members' personal information to any other business or entity except as required by law. *Id.*

Despite these provisions, Defendant has suggested that its database of private biographic and biometric member information may be sold to another provider of similar services. In the website announcement of the cessation of CLEAR's operations, VIP indicated that it may transfer its members' personal identification information to another service provider that would operate a Registered Traveler program. *See id.*, Ex. C. The announcement provides no further details about the entity the information may be transferred to, that entity's privacy policies or the

13

methods by which the transfer may occur. *Id.* The sale, transfer or disclosure to third parties of the database and the information contained therein is contrary to and in violation of the Privacy Policy.

Furthermore, with the termination of CLEAR, Defendant also terminated all of its employees, eliminated its physical presence at its offices and its presence on the internet other than its closure announcement and shut down its telephone and email systems, thereby depriving Plaintiffs, putative class members and all other members of the public of any meaningful ability to contact the company for the purpose of making any inquiry about the status and security of the private biographic and biometric information it collected from CLEAR members. VIP's effective disappearance as an accessible entity with which any communication can be had has resulted in a lack of accountability with respect to its security obligations under the Privacy Policy and TSA's Registered Traveler Program Security, Privacy and Compliance Standards. Such lack of accountability creates a substantial risk that the private information collected by Defendant in connection with CLEAR will be inadvertently lost, stolen or disclosed to unauthorized third parties unless an injunction is granted.

### 3.    Plaintiffs and the putative class will suffer irreparable harm if preliminary injunctive relief is not granted.

Plaintiffs and the putative class will suffer irreparable harm if preliminary injunctive relief is not granted. CLEAR members have provided personal and confidential biographic information to Defendant, including, but not limited to, name, address, telephone number, gender, height, date of birth, social security and driver's license information. *See id.*, Exs. A-B. Biometric information, including digital photos and digital images of fingerprints and irises scans, was collected as well. *Id.* All biographic and biometric information collected by Defendant in relation to CLEAR is maintained on databases in Defendant's control. *See id.*, Ex.

A. **As discussed above, the sale, transfer or disclosure to third parties of the database and the information contained therein is contrary to and in violation of Defendant's Privacy Policy.**

More importantly, disclosure, via sale, transfer or in any other manner, of this private, confidential and personal information would violate the constitutional right to privacy of Plaintiffs and the putative class. An individual's constitutional right to privacy "encompasses 'the individual interest in avoiding disclosure of personal matters.'" *Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). Plaintiffs and members of the putative class should be the sole decision-makers regarding who has access to this information. In addition to the privacy interests, identity theft and other sinister uses for this type of information are very real concerns given the quantity and breadth of the personal information at issue. This is particularly true here because the personal identifying information is maintained in one place, increasing the likelihood of misuse if it becomes available to unauthorized persons.

Furthermore, if this preliminary injunction is not granted and the information at issue is disclosed to another Registered Traveler Program or another unauthorized person, the Court's ability to grant the relief that Plaintiffs' seek in the FAC would effectively be eliminated. "Under the general principles of equity, where a court is called upon to decide whether it will allow a preliminary or *pendente lite* injunction, the duty arising requires it to be determined whether . . . there is such an equitable cause of action presented as justifies the issue of a preliminary injunction to preserve the status pending the suit; that is, to afford an opportunity for a trial of the issues presented." *U.S. v. Baltimore & Ohio R.R. Co.*, 225 U.S. 306, 322 (1912).

The issue of whether a permanent injunction is proper would be rendered moot if the information is disclosed before the issue can be determined by this Court.

For these reasons, Plaintiffs and the other members of the putative class are entitled to a preliminary injunction prohibiting Defendant from selling, transferring or disclosing the private information of Plaintiffs and the putative class to any unauthorized person or entity and prohibiting Defendant from maintaining the data in a manner that is unsecure or inconsistent in any way with its Privacy Policy and with TSA's Registered Traveler Program Security, Privacy Compliance Standards.

## IV.    Conclusion

For the reasons discussed above, Plaintiffs respectfully request that this Court issue an order requiring that Defendant VIP take steps to preserve evidence during the pendency of this action and a preliminary injunction prohibiting the sale or transfer of Plaintiffs' and class members' confidential personal information, as set forth in the proposed orders accompanying this application.

DATED:    August 7, 2009

Robert N. Kaplan
Frederic S. Fox
Christine M. Fox
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

Laurence D. King
Linda M. Fong
Mario M. Choi
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, California 94104
Tel: (415) 772-4700
Fax: (415) 772-4707

Todd M. Schneider
Mark T. Johnson
SCHNEIDER WALLACE COTTRELL
  BRAYTON  KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
  BRAYTON  KONECKY LLP
7702 East Doubletree Ranch Road, Suite 300
Scottsdale, Arizona 85258
Tel: (480) 607-4368
Fax: (480) 348-3999

*Attorneys for Plaintiffs*

**Certificate of Service**

I, Christine M. Fox, declare that I caused a true and correct copy of the foregoing document to be served on all Counsel of record by filing the same using the Court's electronic filing system.

August 7, 2009                                              /s/ *Christine M. Fox*
                                                              Christine M. Fox